**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| RAHEEM WILCOX, | Civil Action No. 21-02063 (KM) (ESK) |
| Plaintiff, | |
| v. | |
| MIKE PIMPINELLI, et al., | **OPINION** |
| Defendants. | |

**KEVIN MCNULTY, U.S.D.J.**

Pro se Plaintiff Raheem Wilcox is a state prisoner incarcerated at East Jersey State Prison. He has filed a civil rights complaint alleging various claims against EJSP officials pursuant to 42 U.S.C. § 1983. I previously granted Plaintiff's IFP application. (DE 5.) While the Court's screening of Plaintiff's initial complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) was pending, he filed a First Amended Complaint. (DE 7.) While screening of the First Amended Complaint was pending, he filed a Second Amended Complaint. (DE 8 ("SAC").) The Second Amended Complaint duplicates much of the First Amended Complaint, but also adds several new defendants and claims. (*Id.*) In this Opinion, I screen the SAC, and dismiss all claims. Because Plaintiff could plausibly allege additional facts which might state a claim, or pursue some of the claims in state court, the dismissal will be without prejudice.

I.        **BACKGROUND**

A.        **Deliberate indifference**

In 2019, Plaintiff was employed in the EJSP Commissary. On May 15, 2019, Plaintiff injured his shoulder when he fell on the 3 Wing stairs while carrying a full commissary cart. (SAC at 3, 12 at ¶ 15.) The stairs did not have a non-slip tread. (*Id.*) Plaintiff was seen and treated by Dr. Barrington Lynch and other medical staff. After an x-ray on May 23, 2019, Plaintiff was diagnosed with mild degenerative disease in his right shoulder and received follow-up treatment for pain. (*Id.*) Several work-related restrictions were ordered: no heavy lifting, climbing of steps, and lower bunk and ground floor only. (*Id.*) Plaintiff filed numerous grievances requesting the installation of non-slip grips on that staircase similar to those installed elsewhere at EJSP. (DE 1-1 at 2.)

On February 29, 2020, Plaintiff submitted a grievance to request a copy of his x-ray and referral for an MRI. (SAC at 12, ¶ 16.) During treatment and recovery, Plaintiff was also seen by Dr. Swarnalatha Asokan, who referred Plaintiff for an MRI and physical therapy in April 2021. (*Id.* at 13, ¶ 17.) During the intervening period, Huggins interfered with Plaintiff's medical lay-in order stemming from a work-related foot injury by having Lewis order Plaintiff to report to work at the Commissary. (*Id.* at ¶ 18.) Plaintiff was ultimately permitted to leave work, however. (*Id.* at ¶ 21.)

Plaintiff was approved for an MRI and physical therapy, which he received at Northern State Prison between July and September 2021. (*Id.* at ¶ 18.) On November 19, 2021, Plaintiff received another MRI. (SAC at 12, n. 2). On February 9, 2022, Dr. Lynch denied an extension of Plaintiff's lower-bunk order. (*Id.*) Plaintiff pursued administrative grievances for each incident described above. (DE 1-1; DE 8-2.)

### B.   Retaliation

On March 11, 2021, Plaintiff requested a reduction of his work hours, which had been extended for COVID-related circumstances to "catch up on work production," to accommodate his collegiate studies. (SAC at 14-15, ¶ 23.) On December 11, 2021, Plaintiff was reassigned from his commissary job to the kitchen. (*Id.* at 15, ¶ 26.) According to Plaintiff, this was a "cover-up for the retaliatory actions" of Business Manager Gantt and former Commissary Supervisor Huggins, who terminated him on December 10, 2021, based on pretextual allegations of disruption, poor work ethic, and lack of fitness for the job. (*Id.*) Plaintiff alleges that he contracted COVID-19 because of the unjustified transfer to the kitchen. (*Id.* at 19, n. 1.)

### C.   The SAC

The SAC's first claim alleges negligence by EJSP Maintenance Supervisor Mike Pimpinelli. (SAC at 3-4.) Plaintiff alleges that Pimpinelli exposed him to the risk of harm by failing to install non-slip grips on the staircase as had been done on other EJSP staircases. (*Id.*)

Plaintiff's second clam alleges negligence by EJSP Assistant Superintendent James Russo for the same injuries. (*Id.* at 4-5.) Plaintiff also alleges that Russo has violated Plaintiff's Eighth Amendment rights by preserving the practice of commissary workers lifting heavy commissary carts up and down the 3 Wing staircase, which lacks non-slip grips. (*Id.*)

Plaintiff's third claim is against Commissary employee Tony Huggins. (*Id.* at 5.) Plaintiff alleges that Huggins exhibited deliberate indifference by forcing Plaintiff to work while Plaintiff

was subject to a medical lay-in order for a work-related foot injury (apparently unrelated to the fall on the stairs). (*Id.*) Plaintiff also alleges that Huggins retaliated against Plaintiff by terminating him for making requests to be excused from work to participate in the NJSTEP prison college program. (*Id.*)

Plaintiff's fourth claim alleges that Corrections Officer C. Lewis, like Huggins, exhibited deliberate indifference by forcing Plaintiff to work while subject to a medical lay-in order. (*Id.*)

Plaintiff's fifth claim is against Business Manager Henry Gantt (*Id.* at 5-6.) Plaintiff alleges that Gantt exhibited deliberate indifference by forcing Plaintiff to "work beyond his physical capabilities." (*Id.* at 5.) Plaintiff also alleges that Gantt terminated Plaintiff in retaliation for Plaintiff making requests to be excused from work to participate in the NJSTEP college program. (*Id.*)

Plaintiff's sixth claim is against Dr. Barrington Lynch. (*Id.* at 6.) Plaintiff claims that Dr. Lynch exhibited deliberate indifference by failing to order a medical lay-in for Plaintiff after he injured his shoulders in the fall down the stairs. (*Id.*). Plaintiff also alleges that Dr. Lynch misdiagnosed his injury and later failed to extend Plaintiff's lower-bunk-only order. (*Id.*)

Plaintiff's seventh claim is against Assistant Superintendent Robin Keller. (*Id.*) Plaintiff alleges that Keller failed to correct the "illegal retaliatory actions" of Gantt and Huggins. (*Id.*)

Plaintiff's eighth and final claim is against Administrator Robert Chetirkin. (*Id.* at 7.) Plaintiff alleges that, like Keller, Chetirkin failed to correct the actions of Huggins and Gantt. (*Id.*) According to Plaintiff, the termination (and failure to correct the termination) resulted in Plaintiff's transfer to a new housing block, where he contracted COVID-19. (*Id.*)

Plaintiff seeks an injunction ordering Defendants to install non-slip grips on the 3-Wing stairs, compensatory, and punitive damages. (SAC at 14-15.)

## II.   DISCUSSION

### A.   Legal standard

Under the Prison Litigation Reform Act ("PLRA"), district courts must review complaints in those civil actions in which a plaintiff is proceeding IFP. *See* 28 U.S.C. § 1915(e)(2)(B). The PLRA directs district courts to *sua sponte* dismiss any claim that is frivolous, is malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B).

"The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012) (citing *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)). That standard is set forth in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). To survive the court's screening for failure to state a claim, the complaint must allege 'sufficient factual matter' to show that the claim is facially plausible. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 308 n.3 (3d Cir. 2014) (quoting Iqbal, 556 U.S. at 678). "[A] pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' " *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

Pro se pleadings, as always, will be liberally construed. *See Haines v. Kerner*, 404 U.S. 519 (1972). Nevertheless, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted).

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

Thus, to state a claim for relief under § 1983, a plaintiff must allege first, the violation of a right secured by the Constitution or laws of the United States, and second, that the alleged deprivation was committed or caused by a person acting under color of state law. *See Harvey v. Plains Twp. Police Dep't*, 635 F.3d 606, 609 (3d Cir. 2011) (citations omitted); *see also West v. Atkins*, 487 U.S. 42, 48 (1988).

## B.    Deliberate indifference

I extract several deliberate indifference claims from the allegations of the Second Amended Complaint. Generally, courts accord prison medical providers "considerable latitude in the diagnosis and treatment of prisoners," *Durmer v. O'Carroll*, 991 F.2d 64, 67 (3d Cir. 1993), and "disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment ... [which] remains a question of sound professional judgment." *Inmates of Allegheny Cnty. Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979) (quoting *Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir. 1977)). Prisoners do not have the right to choose their medical treatment. *Lasko v. Watts*, 373 F. App'x 196, 203 (3d Cir. 2010) (citing *Harrison v. Barkley*, 219 F.3d 132, 136 (2d Cir. 2000).

The first deliberate indifference claim alleges that Dr. Lynch provided inadequate medical care by misdiagnosing Plaintiff's shoulder injury, failing to order a medical lay-in, and failing to extend Plaintiff's lower-bunk only order. Here, Plaintiff acknowledges attempts by Dr. Lynch and other medical staff to provide care to Plaintiff on numerous occasions, including diagnostic testing and sick visits shortly after his fall on the stairs and for years thereafter. (*See, e.g.,* SAC 12 at ¶ 15, n. 2.) Even if the treatment amounted to medical negligence (which I do not find here), Plaintiff's claims constitute "mere disagreement" with his treatment plan, and thus do not rise to the level of a *constitutional* violation. *Ryle v. Fuh*, 820 F. App'x 121, 123–24 (3d Cir. 2020) (dismissing where plaintiff's own allegations acknowledged attempts to provide care including medication, a splint, and scheduling an x-ray) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). I will therefore dismiss this claim without prejudice.

The second deliberate indifference claim is that Defendants Huggins, Lewis, and Gantt forced Plaintiff to work despite medical restrictions. I will also dismiss this claim without prejudice.

Deliberate indifference to a serious medical need involves, not merely substandard care, but the "unnecessary and wanton infliction of pain." *Estelle,* 429 U.S. at 104. Such indifference may be evidenced by an intentional refusal to provide care, delayed provision of medical treatment for non-medical reasons, denial of prescribed medical treatment, denial of reasonable requests for treatment that results in suffering or risk of injury, *Durmer,* 991 F.2d at 68, or "persistent conduct in the face of resultant pain and risk of permanent injury," *White v. Napoleon,* 897 F.2d 103, 109 (3d Cir.1990). It can also include, as Plaintiff alleges here, forcing

an inmate to perform work knowing that the assigned asks would significantly aggravate a medical condition. *Richardson v. Spurlock,* 260 F.3d 495, 499 (5th Cir. 2001); *Stile v. United States*, No. CV 16-3832, 2016 WL 6134128, at *11 (D.N.J. Oct. 20, 2016) (permitting claim alleging that plaintiff was compelled to perform work beyond medical restrictions).

The exact allegations are unclear, but it appears that Plaintiff alleges that Defendants Huggins, Lewis, and Gantt (and perhaps others), forced Plaintiff to work despite a ten-day lay-in order effective April 28, 2021 to May 8, 2021. (SAC 13.) Plaintiff does not define a "lay-in" order, but I will assume, interpreting the claims liberally, that Plaintiff was prescribed bed rest or restricted from performing any work during that time period.

The first problem is that none of the exhibits attached and cited by Plaintiff say what he claims.[1] Exhibit O is a sick call report from a March 11, 2021 visit directing a podiatry consult and a follow-up. (DE 8-2 at 40-42.) There are two orders issued shortly thereafter: a March 31, 2021 order restricting Plaintiff from lifting more than twenty pounds and a progress note on the same day restricting Plaintiff from all work for five days. (*Id.* at 57.) Neither excused Plaintiff from all work between April 28, 2021 to May 8, 2021. Rather, an April 28, 2021 order was merely an extension of the order restricting Plaintiff from lifting more than twenty pounds with his right arm (*Id.*) There was a 10-day work restriction, but it began on May 11, 2021. (*Id.* at 46.)

Additionally, the Complaint does not specifically state *how* any Defendant violated a work restriction. There are numerous passages in the Second Amended Complaint claiming that Plaintiff was forced to report to work, but these are followed by Plaintiff explaining that he was provided with an opportunity to verify his lay-in order. (SAC 13 at ¶¶ 20-22.) *See Jackson v. Pennsylvania Dep't of Corr.*, No. 1:CV-05-1680, 2006 WL 1984628, at *3 (M.D. Pa. July 13, 2006) (plaintiff did not state a deliberate indifference claim where defendants responded to plaintiffs' grievance regarding noncompliance with a lower bunk order by moving plaintiff to a lower bunk). And more importantly, there is no allegation that he actually *performed* any work that violated any medical restriction, whether a complete restriction or a limited restriction on how much he could lift. *Jackson v. Pennsylvania Dep't of Corr.*, No. CV-05-1680, 2007 WL 1074866, at *2 (M.D. Pa. Apr. 9, 2007) ("no work/heavy lifting" restriction was not violated

---

[1] In conducting a statutory screening under 28 U.S.C. § 1915(e)(2)(B), courts have the discretion to consider exhibits attached to a *pro se* plaintiff's complaint. *See Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007).

where plaintiff worked as a window washer, which only required carrying rags and/or paper towels, a spray bottle, and an empty bucket). Accordingly, I will also dismiss this claim without prejudice.

The third claim is that Defendants Pimpinelli and Russo were deliberately indifferent to the dangers posed by having Plaintiff carry commissary carts up the 3 Wing stairs, which lacked non-slip treads, where Plaintiff fell. I note initially that Plaintiff's request for an injunction ordering Defendants to install the treads appears to be moot based on his reassignment to a different job and wing. *See Victorious v. Lanigan*, No. CV 15-6949, 2017 WL 1197808, at \*7 (D.N.J. Mar. 31, 2017) (citing *Abdul-Akbar v. Watson*, 4 F.3d 195, 206–07 (3d Cir. 1993) (vacating injunctive relief ordered by district court in favor of inmate in Delaware's Maximum Security Unit who had been released from the unit five months prior to trial; after the date of the inmate's release from the maximum security unit, because "the district court could not provide [him] with meaningful relief by entering an injunctive order respecting the [maximum security unit] in which [he] no longer was incarcerated")).

Injunctive relief aside, Plaintiff requests monetary damages for alleged constitutional violations stemming from his fall on the stairs. To determine whether prison officials have violated the Eighth Amendment, courts apply a two-prong test: (1) the deprivation must be "objectively, sufficiently serious; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities"; and (2) the prison official must have been "deliberate[ly] indifferen[t] to inmate health or safety." *Porter v. Pennsylvania Dep't of Corr.*, 974 F.3d 431, 441 (3d Cir. 2020) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). An official is deliberately indifferent if he "knows of and disregards an excessive risk to inmate health or safety." *Id*. at 837. "Prisons are not required to provide a maximally safe environment, but they must address easily preventable, observed hazards that pose a significant risk of severe harm to inmates." *Anderson v. Morrison*, 835 F.3d 681, 683 (7th Cir. 2016).

To satisfy the objective prong of this test "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Mammana v. Fed. Bureau of Prisons*, 934 F.3d 368, 373 (3d Cir. 2019) (quoting *Farmer*, 511 U.S. at 834). "The proof necessary to show that there was a substantial risk of harm is less demanding than the proof needed to show that there was a probable risk of harm." *Chavarriaga v. N.J. Dep't of Corrs.*, 806 F.3d 210, 227 (3d Cir. 2015). Courts addressing similar hazards have found that the presence of

faulty stairs might be deemed negligent, but cannot alone satisfy the objective prong of a conditions-of-confinement claim. *Allen v. Stringer*, No. 20-3953, 2021 WL 4472667 (2d Cir. Sept. 30, 2021) (broken stairs cannot "be considered a risk that is so grave that it violates contemporary standards of decency) (quoting *Helling v. McKinney*, 509 U.S. 25, 36 (1993)). On the other hand, a constitutional claim was allowed to proceed where additional facts raised the risk to the level of an "unreasonable peril"; in that case, the prisoner was forced to walk handcuffed and unaided down stairs needlessly strewn with easily removable milk, food, and garbage. *Anderson*, 835 F.3d at 683 (7th Cir. 2016).

Here, I afford Plaintiff every favorable inference and credit his allegations that carrying an object up a staircase lacking grips was dangerous. The allegations nevertheless remain at the *Allen* level, and do not rise to the *Andrews* level of a constitutional violation. This alone would merit dismissing this deliberate indifference claim. But even if Plaintiff had met the first prong, I would find that he fails to satisfy the second, subjective prong of the test.

The subjective prong turns on whether a plaintiff alleges facts indicating that  a particular defendant actually knew of and disregarded a substantial risk of serious harm. *See Farmer,* 511 U.S. at 837; *compare Spencer v. Sylvester,* No. 97–CV–5491, 1999 WL 61644, at *3 (E.D.N.Y. Feb. 2, 1999) (dismissing Eighth Amendment claim where plaintiff did not allege that defendant was personally aware of slippery conditions on stairs and landing or that he was deliberately indifferent to the alleged conditions)[5], *with Gill v. Mooney,* 824 F.2d 192, 195 (2d Cir.1987) (holding that inmate who fell from a ladder during a work assignment stated an Eighth Amendment claim where the officer ordered him to continue working after being informed that the ladder was unsafe). Deliberate indifference "describes a state of mind more blameworthy than negligence" and "requires more than ordinary lack of due care for the prisoner's interests or safety." *Id.* at 835.

"[A] prison official's knowledge of prison conditions learned from an inmate's communications can, under some circumstances, constitute sufficient knowledge of the conditions to require the officer to exercise his or her authority to take the needed action to investigate, and, if necessary, to rectify the offending condition.... In other words, prisoner requests for relief that fall on 'deaf ears' may evidence deliberate indifference.". *Steele v. Wexford Health Sources, Inc.*, No. 17 C 6630, 2018 WL 2388429, at *4 (N.D. Ill. May 25, 2018)

(quoting *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015). This requirement of notice logically assumes that a prison official learned of the condition *before* any injury occurred.

Here, Plaintiff alleges that he filed grievances informing Defendants of the dangerous stairs *after* his fall. (SAC at 9, citing DE 1-1 at 1, 2.) While indeed there are numerous grievances referring to conditions on the stairs, they all post-date Plaintiff's injuries on May 15, 2019. Thus, the grievances do not suggest (and Plaintiff does not allege) Defendants' knowledge of any specific danger posed by the 3 Wing stairs before May 15, 2019, when Plaintiff was injured. *Hill v. Dobey*, No. CIV.A. 6:08-4080-HMH, 2010 WL 4000544, at *3 (D.S.C. Sept. 10, 2010), *report and recommendation adopted,* No. CA 6:08-4080, 2010 WL 3998257 (D.S.C. Oct. 12, 2010) (plaintiff failed to state a claim for deliberate indifference where the only grievance related to a leaky toilet which caused plaintiff's fall was filed after the fall). *Cf. Vallade v. Fischer*, No. 12-CV-00231, 2014 WL 5481881, at *11 (W.D.N.Y. Oct. 29, 2014) (denying summary judgment where defendant acknowledged that he recognized that plaintiff's shoes were not on properly and could cause him to fall and plaintiff testified that he was being rushed up the stairs while handcuffed behind the back).

Accordingly, I will also dismiss this third claim, relating to the 3 Wing stairs, without prejudice.

### C.    Retaliation

Plaintiff alleges some form of direct retaliation claim against Commissary Officer Huggins, Business Manager Gantt, and further alleges that Assistant Superintendent Keller and Administrator Chetirkin failed to address the retaliation. I will also dismiss these claims without prejudice.

In the prison context, the elements of a First Amendment retaliation claim are that (1) the prisoner engaged in constitutionally protected conduct, (2) prison officials took an adverse action against the prisoner sufficient to deter a person of ordinary firmness from exercising his[2] constitutional rights, and (3) there is a causal link between the exercise of the prisoner's constitutional rights and adverse action taken against him. *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003) (quoting *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001)).

---

[2]    The prisoner happens to be male in this case.

The constitutionally protected conduct allegedly giving rise to retaliation could be either the Plaintiff's pursuit of college classes, or his grievances asking to be excused from work hours to pursue those classes. The classes themselves are not constitutionally protected. *Hussar v. Nichols*, No. CV 12-00045, 2012 WL 6962059, at *3 (D. Mont. Nov. 28, 2012), *report and recommendation adopted*, No. CV 12-45, 2013 WL 352363 (D. Mont. Jan. 29, 2013) (there is no constitutionally protected interest in prison education or rehabilitation classes) (citing *Hernandez v. Johnston,* 833 F.2d 1316, 1319 (9th Cir.1987)). But affording Plaintiff every favorable inference, I will assume for screening purposes that Plaintiff is alleging that he was punished for filing grievances, which is constitutionally protected conduct. *Laurensau v. Romarowics*, 528 Fed. App'x. 136, 139 (3d Cir. 2013).

That said, Plaintiff's allegations fail to satisfy the remaining elements of a retaliation claim. First, Plaintiff fails to demonstrate that he suffered any adverse action. An adverse action "need not be great in order to be actionable[;]" rather, it need only be "more than *de minimis*." *Watson v. Rozum*, 834 F.3d 417, 423 (3d Cir. 2016). This can include the loss of a prison work assignment. *See Wisniewski v. Fisher*, 857 F.3d 152, 157 (3d Cir. 2017).

A reassignment, however, is not an adverse action where there are no negative consequences associated with the new position. *Sloan v. Pennsylvania Dep't of Corr.*, 800 F. App'x 143, 148 (3d Cir. 2020), *cert. denied*, 142 S. Ct. 138 (2021) (transfer from maintenance job to library aide not adverse where plaintiff was paid in the six-week gap between assignments, compensated at the same rate in the new position, and new duties were not "more unpleasant."). Here, Plaintiff does not allege that his new assignment and duties as a kitchen worker were more unpleasant or in any way a punishment. Indeed, though Plaintiff later withdrew his request, he acknowledges that he had himself requested to be placed on the Food Service and Kitchen Staff waiting list as of at least November 3, 2021. (DE 8-2 at 7, 57 ("per food service placed on waiting list").)

Nor does Plaintiff demonstrate a causal connection between his grievances and his work reassignment. To establish the requisite causal connection, a plaintiff usually must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link. *See Krouse v. American Sterilizer Co.,* 126 F.3d 494, 503–04 (3d Cir. 1997); *Woodson v. Scott Paper Co.,* 109 F.3d 913, 920–21 (3d Cir. 1997). In the absence of such proof, the plaintiff must

10

show that the trier of fact should infer causation from the "evidence gleaned from the record as a whole." *Farrell v. Planters Lifesavers Co.,* 206 F.3d 271, 281 (3d Cir. 2000).

Here, Plaintiff does not provide the date of his first grievance requesting to be excused from extended Commissary work hours, but does cite a October 5, 2021 follow-up. (DE 8-2 at 7.) But Plaintiff was not reassigned until December 11, 2021, over two months later. Even the shorter time lag between the followup grievance and the new work assignment was two months. Without any other indication of retaliatory motive, that temporal proximity is insufficient to demonstrate causation. *See DeFranco v. Wolfe,* 387 F. App'x 147 (3d Cir.2010) (two months temporal proximity insufficient to suggest causation). Accordingly, I will dismiss the retaliation claims against Huggins and Gantt.

Without any viable retaliation claim, Plaintiff's derivative claims against Defendants Keller and Chetirkin for failing to correct the other Defendants' alleged retaliation also cannot withstand screening. But even if the underlying retaliation claims were viable, Plaintiff's theory of liability against both stems primarily from Keller and Chetirkin's supervisory capacities as Assistant Superintendent and Administrator. A supervisory job title is not sufficient to create liability; § 1983 does not incorporate *respondeat superior*, but requires personal involvement. *Pressley v. Beard,* 266 F. App'x 216, 218 (3d Cir. 2008) (citing *Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir. 1988). Such liability must rest on the supervisor's "establishment of policies, practices, or customs that directly caused the constitutional violation [or] personal liability based on the supervisor participating in the violation of [the p]laintiff's rights, directing others to violate [the p]laintiff's rights, or having knowledge of and acquiescing to a subordinate's conduct." *Doe v. New Jersey Dep't of Corr.*, No. 14-5284, 2015 WL 3448233, at *9 (D.N.J. May 29, 2015). "Allegations of participation or actual knowledge and acquiescence ... must be made with appropriate particularity." *Rode*, 845 F.2d at 1207.

The only direct involvement alleged is Chetirkin's failure to remedy the other Defendants' retaliation, which caused plaintiff to be reassigned from the commissary to the kitchen, where he contracted COVID-19. The causal link is highly attenuated, and there is no allegation that the supervisor knew or should have known of an enhanced risk of COVID at one job or the other. But even if a plausible causal link could be established, and even if there were a viable underlying retaliation claim, this claim against Chetirkin would fail. *See Hope v. Warden York Cty. Prison*, 972 F.3d 310, 330 (3d Cir. 2020) (exposure to COVID-19 and the

11

government's failure to eliminate an inmate's risk of exposure are not per se unconstitutional). Plaintiff does not allege, for example, that Chetirkin, or any Defendant, knew of and disregarded an excessive risk to Plaintiff's health and safety. *Nicini v. Morra*, 212 F.3d 798, 811 (3d Cir. 2000) (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). Accordingly, any remaining retaliation claims will also be dismissed without prejudice.

## III.    CONCLUSION

For the reasons above, Plaintiff's complaint is DISMISSED WITHOUT PREJUDICE. An appropriate order follows.

Date: April 5, 2022

/s/ Kevin McNulty

_____
Kevin McNulty
United States District Judge

12