**Not for Publication**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

RAHEEM WILCOX,

                    Plaintiff,

        v.

MIKE PIMPINELLI, *et al.*,

                    Defendants.

Civil Action No. 21-2063 (JXN)(MAH)

**OPINION**

**NEALS**, District Judge

Before the Court is *pro se* Plaintiff Raheem Wilcox's ("Plaintiff") Third Amended Complaint ("TAC")[1], filed pursuant to 42 U.S.C. § 1983, and motion to appoint pro bono counsel. (ECF Nos. 32, 33.)

On April 5, 2022, after granting Plaintiff's application to proceed *in forma pauperis* (ECF No. 4), the Honorable Kevin McNulty U.S.D.J. (ret) ("Judge McNulty") screened Plaintiff's second amended complaint for dismissal under 28 U.S.C. § 1915(e)(2)(B).[2] (*See* ECF Nos. 11, 12.) Judge McNulty dismissed Plaintiff's second amended complaint without prejudice for failure to state Eighth Amendment deliberate indifference and First Amendment retaliation claims and

---

[1] As laid out in detail in this Court's April 2, 2024, Memorandum and Order (ECF No. 29), Plaintiff has filed numerous "addendums" and "supplements" throughout the history of this matter. (*Id.* at 1-2.) Although Plaintiff refers to his most recent filing as a "second amended complaint," the submission seeks to amend his second amended complaint (ECF No. 8). (*See generally* ECF No. 33.) For the purposes of this Opinion, the Court will refer to Plaintiff instant amendment as his Third Amended Complaint.

[2] On December 5, 2023, this matter was reassigned to the undersigned for all further proceedings. (ECF No. 28.)

permitted Plaintiff to file an amended complaint if he could cure the deficiencies noted by Judge McNulty. (*See id.*)

On May 3, 2024, Plaintiff filed his TAC. (ECF No. 33.) Plaintiff again raises Eighth Amendment deliberate indifference claims and First Amendment retaliation claims. (*See id.*) Plaintiff has also filed a motion for the appointment of pro bono counsel. (ECF No. 32.)

The Court must now review the TAC, pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A, to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief. For the reasons stated herein, Plaintiff's TAC shall proceed in part, and his motion for appointment of pro bono counsel is denied without prejudice.

## I.    BACKGROUND[3]

On May 3, 2024, Plaintiff, a state prisoner incarcerated at East Jersey State Prison ("EJSP"), in Rahway, New Jersey, filed his TAC in this matter seeking to raise claims against EJSP Administrator Robert Chertirkin ("Chertirkin"), EJSP Assistant Superintendent James Russo ("Russo"), EJSP Assistant Superintendent Robin Keller ("Keller"), Former Associate Administrator Cidney Sweeny ("Sweeny"), Commissary Supervisor Tony Huggins ("Huggins"), Commissary Corrections Officer C. Lewis ("Lewis"), Business Manager Henry Gantt ("Gantt"), and Dr. Barrington Lynch ("Lynch").[4] (*See* ECF No. 33.) Plaintiff's claims arise from Plaintiff's slip-and-fall and subsequent medical treatment and work-related restrictions, as well as the loss of his commissary job. The Court construes the TAC as raising claims for failure to provide medical care, failure to protect, and retaliation.

---

[3] The Court construes the factual allegations of the Complaint as true for the purposes of this screening only.

[4] Plaintiff indicates that he is no longer raising claims against previously named defendant Mike Pimpinella. (*See* ECF No. 33 at 1.)

According to the TAC, in 2019, Plaintiff was employed in the EJSP commissary. (ECF No. 33 at ¶ 1.) On May 15, 2019, Plaintiff injured his right shoulder when while carrying a full commissary cart he fell on the "3 Wing" stairs, which did not have a non-slip tread. (*Id.*) On the same day, Plaintiff was seen by Defendant Lynch and other medical staff. (*Id.*) Defendant Lynch "noted that there were no signs of fracture or dislocation per his examination and diagnosed and concluded that [Plaintiff] had a mild shoulder contusion." (*Id.*)

After an X-ray on May 23, 2019, Plaintiff was diagnosed with mild degenerative disease in his right shoulder and received follow-up treatment for pain. (*Id.* ¶ 2.) Plaintiff was given several work-related restrictions for a one-year period, including no heavy lifting, climbing stairs, and lower bunk and ground floor cell accommodations. (*Id.*; *see also* ECF No. 33-1 at 11.) After the May 2019 slip-and-fall, Plaintiff filed grievances in February, September, and October 2020, requesting that the non-slip grips installed elsewhere at EJSP be installed on the stairs where he fell. (*Id.* at ¶ 18; *see also* ECF No. 33-1 at 1-3.) Defendant Russo forwarded Plaintiff's grievance to the maintenance department for review. (*Id.* at ¶ 20.) Plaintiff was advised to see "his wing officer or area supervisory to submit a work order." (*Id.*)

On May 12, 2020, Plaintiff was given a three-month extension of his no-heaving lifting work restriction, and it was noted that he denied exercising with heavy weights, but it was recommended that he do therapeutic exercise. (*Id.* at ¶ 16; ECF No. 8-2 at 19-20.) In December 2020, Plaintiff was given a work-related restriction of "no lifting more than 20 lbs. with the right arm." (*Id.* at ¶ 17; ECF No. 8-2 at 24.) On March 31, 2021, Plaintiff's weight restriction was again extended for three more months. (*Id.* at ¶ 24.)

Plaintiff submits that in March 2021, he requested an accommodation to shorten his working hours after they were temporarily increased due to circumstances related to Covid-19. (*Id.*

at ¶ 25.) Plaintiff requested the reduction in hours to accommodate his "collegiate studies due to his enrollment in the NJSTEP prison program." (*Id.* at ¶ 26.)

On March 9, 2021, Plaintiff was seen by medical with complaints of foot pain from wearing work boots all day in the commissary. (*Id.* at ¶ 24.) On March 31, 2021, Plaintiff was given a medical order restricting him from all work for five days.[5] (*Id.*) On May 3, 2021, Plaintiff was given an extension of his medical lay-in for an additional ten (10) days. (ECF No. 8-2 at 46.) On July 1, 2021, he was given an extension of his no heavy lifting restriction for ongoing shoulder and foot pain. (ECF No. 33 at ¶ 24.)

In May 2021, Plaintiff filed a grievance concerning his supervisors, Defendant Huggins and Ms. Theresa Xifo, "interfering with his medical lay-in order after he was treated for a work-related foot injury," alleging that Defendant Lewis called him into work to question the validity of his medical lay-in on April 30, 2021, and May 3, 2021. (*Id.* at ¶ 27.) Plaintiff advised Defendant Sweeny that he did not "think that it was permissible for his detail officer Lewis calling him on behalf of his supervisors to report to work [] to question him about the validity of his medical no[te] extending standing and no work or lay-in order for his foot[,]" which was in effect from April 28, 2021, to May 8, 2021. (*Id.* at ¶ 28.) Plaintiff submits that he was permitted to leave work, but his supervisors "demanded" a copy of his lay-in slip and they required him to report to work on May 3, 2021, to "deliver commissary on 3 wing." (*Id.* at ¶ 29.)

On May 20, 2021, Plaintiff filed a grievance to Defendant Sweeny regarding Defendant Lewis attempting to terminate Plaintiff in retaliation for filing a grievance regarding being required to report to work during his medical lay-in. (*Id.* at ¶ 31.) In response, Plaintiff was informed that he was still working in the commissary. (*Id.*)

---

[5] This period of restriction from all work is referred to as a "medical lay-in." (*See* ECF No. 8-2 at 46.)

Between July and September 2021, Plaintiff received physical therapy for his shoulder. (*Id.* at ¶ 3.) In August 2021, Plaintiff submitted requests to Defendant Russo for back braces or dollies to ease the strain of carrying large quantities of water and soda due to his work restrictions. (*Id.* at ¶¶ 22-23.) Plaintiff was informed that back braces were only supplied via the medical department, and he must see his supervisor regarding a dolly. (*Id.*)

On October 5, 2021, Nurse Practitioner Alejandrina Sumicad ordered another three-month extension of Plaintiff's no heavy lifting restriction. (*Id.*) On that same day, Plaintiff submitted an inquiry to Defendant Sweeney complaining that his work hours and days were being frequently extended. (*Id.* at ¶ 33.) Defendant Sweeney forwarded his inquiry to Defendant Gantt. (*Id.*) On November 16, 2021, Plaintiff received another X-ray, which indicated evidence of a remote shoulder dislocation. (*Id.* at ¶ 4.) Dr. Swarnaltha Asokan ordered an orthopedic consultation. (*Id.*)

Plaintiff submits that Defendant Huggins threatened to fire Plaintiff from the commissary at the direction of Defendant Gantt for filing inquiries regarding his request for a reduction in his work hours. (*Id.* at ¶ 37.) On November 8, 2021, Plaintiff submitted a job change request for officer dining room or kitchen sanitation service. (*Id.* at ¶ 38.) However, on November 14, 2021, Plaintiff submitted a request to be removed from the waiting list for a job change. (*Id.*) On December 10, 2021, Plaintiff was transferred to a double cell on 3 Wing "under the false pretense of being reassigned as kitchen worker" even though he had been asked to be removed from the job change waiting list. (*Id.* at ¶ 39.) On January 2, 2022, Plaintiff submitted a grievance to Defendant Chertirkin regarding Plaintiff being reassigned from commissary to kitchen worker on December 11, 2021. (*Id.* at ¶ 34; ECF No. 8-2 at 7.) On January 19, 2022, Defendant Keller responded that Plaintiff was removed from commissary because he "was spoken to several times by the business manager when [he was] a commissary worker regarding [his] work ethic and disruptive behavior"

and that Plaintiff was "not a good fit for the demands of the commissary job." (*Id.*; ECF No. 8-2 at 7.) On January 20, 2022, Plaintiff appealed and alleged that Defendant Gantt's firing of him was retaliatory, and his former supervisor, Defendant Huggins, never questioned his work ethic or accused him of disruptive behavior. Plaintiff also claims that Defendant Keller's response that Plaintiff was "not a good fit for the demands" of the job showed that he was fired due to his prior shoulder injury and no heavy lifting restrictions. (*Id.* at ¶ 35; ECF No. 8-2 at 7.)

Plaintiff submits that Defendant Lynch denied his request for an extension of his bottom bunk restriction in February 2022. (*See id.* at ¶ 6, n.2; *see also* ECF No. 8 at 12 ¶ 15, n.2.) In February 2023, Dr. Ahman Shakir saw Plaintiff for an orthopedic consultation and diagnosed with right shoulder degenerative joint disease. (*Id.* at ¶ 5; see also ECF No. 33-1 at 15.) Dr. Shakir noted that Plaintiff reported having "difficulty with daily activities such as climbing up to his top bunk." (ECF No. 33-1 at 15.) Plaintiff declined an intra-articular corticosteroid injection. (*Id.*) Plaintiff requested a bottom bunk pass, which Dr. Shakir denied, noting that "upon discussion with the primary treating physicians, they have observed him performing strenuous activity such as basketball and exercising with weights." (*Id.*) Dr. Shakir found that Plaintiff should perform daily activities as tolerated and recommended "no specific restrictions." (*Id.*)

On February 17, 2023, and February 19, 2023, Plaintiff submitted two grievances regarding Defendant Lynch "misleading Dr. Shakir to deny [] his request for a low bunk pass." (ECF No. 33 at ¶ 12.) Plaintiff submits that he denied exercising with heavy weights and playing basketball and noted that the physical therapist recommended that he exercise with light weights. (*Id.* at ¶ 13.) Plaintiff was informed by the "[m]edical [p]roviders that [o]rthopedic does not dictate orders for New Jersey Department of Corrections medical policy for low bunk orders that are for acute injuries only." (*Id.* at ¶ 15.)

6

In his TAC, Plaintiff seeks declaratory relief and monetary compensation.

## II.   STANDARD OF REVIEW

District courts must review complaints in civil actions in which a plaintiff is proceeding *in forma pauperis*, *see* 28 U.S.C. § 1915(e)(2)(B), or seek redress against a governmental employee or entity. *See* 28 U.S.C. § 1915A(a). District courts may *sua sponte* dismiss any claim that is frivolous, malicious, fails to state a claim upon which the court may grant relief, or seeks monetary relief from a defendant who is immune from such relief. *See* §§ 1915(e)(2)(B), 1915A(b).

The legal standard for dismissing a complaint for failure to state a claim pursuant to Sections 1915(e)(2)(B) or 1915A is the same as that for dismissing a complaint under Federal Rule of Civil Procedure 12(b)(6). *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012); *Courteau v. United States*, 287 F. App'x 159, 162 (3d Cir. 2008). A court properly grants a motion to dismiss pursuant to Rule 12(b)(6) if, "accepting all well pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (quotations and citations omitted).

To survive *sua sponte* screening for failure to state a claim, the complaint must allege "sufficient factual matter" to show that the claim is facially plausible. *Fowler v. UPMS Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 483 n.17 (3d Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Moreover, *while pro se* pleadings are liberally construed, "pro se litigants still must allege sufficient facts in their

complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted).

## III.   DISCUSSION

In the TAC, Plaintiff alleges that Defendants are liable to him under 42 U.S.C. § 1983 because they violated his First and Eighth Amendment rights. (*See generally* ECF No. 33.) A plaintiff may have a cause of action under 42 U.S.C. § 1983 for violations of his constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Thus, to obtain relief under § 1983, a plaintiff must establish (1) that one of his rights secured by the Constitution or laws of the United States was violated and (2) that this violation was caused or committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Graham v. Connor*, 490 U.S. 386, 393-94 (1989); *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000). In a § 1983 action, the personal involvement of each defendant in the alleged constitutional violation is a required element, and, therefore, a plaintiff must allege how each defendant was involved in the events and occurrences giving rise to the claims. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998).

### A.   Failure to State a Claim

#### 1.   *Eighth Amendment Deliberate Indifference-Failure to Protect*

Plaintiff raises Eighth Amendment failure to protect claims against Defendants Gantt, Huggins, and Lewis. (ECF No. 33 at 2-3.) Plaintiff alleges that Defendants Gantt, Huggins, and Lewis acted with deliberate indifference by disregarding an excessive risk to his health and safety

by forcing Plaintiff to work beyond his physical capabilities and medical heavy lifting restrictions. (*Id.*)

"A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 828 (1994) (citations omitted). To establish a failure to protect claim, inmates must demonstrate that (1) they are "incarcerated under conditions posing a substantial risk of serious harm"; and (2) the prison official acted with "deliberate indifference" to their health and safety. *Brown v. Maxw*ell, No. 23-1480, 2024 WL 1209517, at *2 (3d Cir. Mar. 21, 2024) (quoting *Farmer*, 511 U.S. at 834). "'[T]he official must actually be aware of the existence of the excessive risk; it is not sufficient that the official should have been aware.'" *Id.* (quoting *Beers-Capitol v. Whetzel*, 256 F.3d 120, 133 (3d Cir. 2001)).

The TAC fails to state an Eighth Amendment failure to protect claim. Plaintiff alleges that due to a foot injury he was given a "medical lay-in order" from April 28, 2021 through May 8, 2021. (ECF No. 33 at ¶¶ 27-28.) On April 30, 2021, during his lay-in, Defendant Huggins instructed Defendant Lewis to call Plaintiff to report to work, where they questioned him regarding the validity of his lay-in. (*Id.*) Defendants Lewis and Huggins required Plaintiff to provide a copy of his lay-in slip. (*Id.* at ¶ 29.) Plaintiff alleges that on May 3, 2021, Defendant Lewis again required Plaintiff to report to work for a commissary delivery. (*Id.* ¶ 30.) Plaintiff grieved this matter and indicated that on May 3, 2021, he was required to report to work and shortly after was sent on a medical pass to pick up his medical lay-in slip. (ECF No. 8-2 at 1.) In response to his grievance, Defendant Sweeney informed Plaintiff that "an officer is permitted to verify the whereabouts of the inmate that reports to him/her." (*Id.*)

Plaintiff does not allege that Defendants Huggins and Lewis required him to perform work during his lay-in. Rather, he alleges that Defendants Huggins and Lewis required him to report to work and instructed him that he needed to provide proof of his medical lay-in. Plaintiff also does not plead that he provided Defendants Huggins and Lewis with the requested proof of his lay-in after their initial April 30, 2021 request. The TAC lacks any factual allegations that suggest Defendants Lewis and Huggins were aware of an excessive risk to Plaintiff's safety by requiring medical proof of his inability to work Additionally, although Plaintiff indicates that he is raising a deliberate indifference claim against Defendant Gantt, he fails to present any facts that Defendant Gantt required him to work during this medical lay-in or participated in questioning Plaintiff regarding the validity of his lay-in. In short, Plaintiff fails to plead fact that Defendant Gantt was personally involved in this violation. *Rode*, 845 F.2d at 1207 (finding a defendant in a civil rights action must have personal involvement.) Therefore, Plaintiff's deliberate indifference claim against Defendant Huggins, Lewis, and Gantt are dismissed.

### 2. *Eighth Amendment Deliberate Indifference to Serious Medical Needs*

The TAC raises an Eighth Amendment deliberate indifference to Plaintiff's medical needs claim against Defendant Lynch. (ECF No. 33 at 3.)

The Eighth Amendment prohibits the states from inflicting "cruel and unusual punishments" on those convicted of crimes. *Rhodes v. Chapman*, 452 U.S. 337, 344–46 (1981). This proscription against cruel and unusual punishment requires prison officials to provide inmates with adequate medical care. *Estelle*, 429 U.S. at 103–04. In order to set forth a cognizable claim for a violation of his right to adequate medical care, an inmate must allege (1) a serious medical need and (2) behavior on the part of prison officials that constitutes deliberate indifference to that need. *Id.* at 106.

To satisfy the first prong of the *Estelle* inquiry, the inmate must demonstrate that his medical needs are serious. Serious medical needs include those that have been diagnosed by a physician as requiring treatment or are so obvious that a layperson would recognize the necessity for a doctor's attention and those conditions which, if untreated, would result in lifelong handicap or permanent loss. *Monmouth Cty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987).

The second element of the *Estelle* test requires an inmate to show that prison officials acted with deliberate indifference to his serious medical needs. "Deliberate indifference" is more than mere malpractice or negligence; it is a state of mind equivalent to reckless disregard of a known risk of harm. *Farmer v. Brennan*, 511 U.S. 825, 837–38 (1994). A plaintiff alleges deliberate indifference "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).

Plaintiff alleges that in February 2022, Defendant Lynch denied Plaintiff's request for an extension of his bottom bunk restriction. (ECF No. 33 at ¶ 6.) The following year, in February 2023, Dr. Shakir, an orthopedist, denied Plaintiff's renewed bottom bunk request noting that "upon discussion with the primary treating physicians, they have observed him performing strenuous activity such as basketball and exercising with weights." (*Id.* at ¶ 5; ECF No. 33-1 at 15.) Plaintiff submitted two grievances regarding Defendant Lynch "misleading Dr. Shakir to deny [] his request for a low bunk pass." (ECF No. 33 at ¶ 12.) Plaintiff submits that he denied exercising with heavy weights and playing basketball and noted that the physical therapist recommended that he exercise with light weights. (*Id.* at ¶ 13.)

"Courts have found that it can be [a constitutional] violation where an inmate has a serious medical need requiring him to use the bottom bunk, but prison officials are deliberately indifferent to that need.'" *Concepcion v. Russell*, 2021 WL 826301, at *4 (E.D. Pa. Mar. 4, 2021) (quoting *Saunders v. GEO Grp., Inc.*, 2019 WL 5558659, at *4 (E.D. Pa. Oct. 25, 2019) (quoting *Whitehead v. Wetzel*, 2016 WL 356809, at *7 (W.D. Pa. June 2, 2016)); *see Wall v. Bushman*, 639 F. App'x 92, 95 (3d Cir. 2015) (reversing grant of summary judgment where disputed issue of material fact existed from which a rational factfinder could conclude that prison doctor recklessly disregarded prisoner's need for a lower-bunk assignment or denied the lower-bunk assignment for non-medical reasons)). The allegations throughout the TAC submit that Plaintiff's heavy lifting restrictions were continuously renewed. Plaintiff alleges that Defendant Lynch misled Dr. Shakir into thinking Plaintiff was performing strenuous activity. Plaintiff submits that he was permitted to exercise with light weights. Plaintiff presents allegations that Defendant Lynch knew of Plaintiff's heavy lifting restrictions and misinformed the orthopedist of Plaintiff's level of physical activity. At this early stage of screening, Plaintiff may proceed with his deliberate indifference claim against Defendant Lynch.

### 3. *First Amendment Retaliation*

The TAC raises First Amendment retaliation claims against Defendants Huggins and Gantt. (ECF No. 33 at 2.)

Prison officials may not interfere with a prisoner's exercise of First Amendment rights unless interference is reasonably related to a legitimate penological interest, nor may prison officials retaliate against a prisoner for exercising his First Amendment rights. *See Turner v. Safley*, 482 U.S. 78, 90 (1987). An incarcerated plaintiff pleads a claim for retaliation by alleging that "(1) he engaged in constitutionally protected conduct[,] (2) he suffered an adverse action[,] and (3) the

constitutionally protected conduct was a substantial or motivating factor for the adverse action." *Brant v. Varano*, 717 F. App'x 146, 149 (3d Cir. 2017); *see also Rauser v. Horn*, 241 F.3d 330, 333–34 (3d Cir. 2001).

Plaintiff claims that Defendants Gantt and Huggins terminated him from his commissary job in retaliation for Plaintiff requesting approval to be excused from working beyond his regular working hours due to his NJSTEP classes and grieving being forced to work beyond his medical restrictions. A prisoner's ability to file grievances and lawsuits against prison officials is a constitutionally protected activity for purposes of a retaliation claim. *See Milhouse v. Carlson*, 652 F.2d 371, 373–74 (3d Cir. 1981); *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003); *Watson v. Rozum*, 834 F.3d 417, 422 (3d Cir. 2016). Plaintiff alleges that he filed a request seeking an accommodation of his work hours in March and October 2021 (ECF No. 33 at ¶¶ 25-26) and grievances regarding being required to come to work during his medical lay-in in May 2021 (*Id.* at ¶27). Plaintiff filed a grievance on May 20, 2021, alleging that Defendant Lewis attempted to fire him in retaliation for his grievance. (*Id.* at ¶ 31.) Plaintiff filed another request regarding a reduction in his working hours in October 2021. (*Id.* at ¶ 33.) Plaintiff alleges that Defendant Huggins then threatened to fire Plaintiff at the direction of Defendant Gantt. (*Id.* at ¶ 37.) On November 8, 2021, Plaintiff submitted a job change request for officer dining room or kitchen sanitation service. (*Id.* at ¶ 38.) However, on November 14, 2021, Plaintiff submitted a request to be removed from the waiting list for a job change. (*Id.*) On December 10, 2021, Plaintiff was transferred and reassigned as a kitchen worker. (*Id.* at ¶ 39.) Plaintiff has submitted to the Court a December 21, 2021, letter from Plaintiff to Commissioner Victoria Kuhn in which he alleged that Defendant Huggins had told Plaintiff that he should quit his commissary job if he had a problem

with the hours, and Plaintiff also claimed that he overheard Defendant Huggins speaking to Lieutenant Pirnik about firing Plaintiff. (EFC No. 33-1 at 16.)

As noted, filing a grievance is protected conduct. Plaintiff alleges that he suffered adverse actions because of filing a grievance, including Defendant Huggins threatening to fire him at the direction of Defendant Gantt and then ultimately being transferred from commissary to kitchen sanitation. Plaintiff has asserted a plausible retaliation claim against Defendants Huggins and Gantt.

### 4. Supervisory Liability

The Court construes the Complaint as asserting supervisory liability claims against Defendants Keller, Chertirkin, Sweeny, and Russo. (ECF No. 33 at 5.)

A plaintiff may establish supervisory liability under § 1983 by showing (1) liability based on an establishment of policies, practices, or customs that directly caused the constitutional violation or (2) personal liability based on the supervisor participating in the violation of the plaintiff's rights, directing others to violate the plaintiff's rights, or having knowledge of and acquiescing to a subordinate's conduct. *Doe v. New Jersey Dep't of Corr.*, No. 14-5284, 2015 WL 3448233, at *9 (D.N.J. May 29, 2015). "Allegations of participation or actual knowledge and acquiescence . . . must be made with appropriate particularity." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1987). "Only those defendants whose inactions or actions personally caused [Plaintiff's] injury may be held liable under § 1983." *Shaw by Strain v. Strackhouse*, 920 F.2d 1135, 1147 (3d Cir. 1990). In other words, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*." *Rode*, 845 F.2d at 1207.

"[T]o hold a supervisor liable . . . [for their deficient policy or practice] . . . the plaintiff must identify a specific policy or practice that the supervisor failed to employ and show that: (1) the existing policy or practice created an unreasonable risk of [a constitutional] injury; (2) the supervisor was aware that the unreasonable risk was created; (3) the supervisor was indifferent to that risk; and (4) the injury resulted from the policy or practice." *Beers-Capitol v. Whetzel*, 256 F.3d 120, 133–34 (3d Cir. 2001) (citing *Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989)).

### a.  Defendants Keller and Chertirkin

In his TAC, Plaintiff alleges that Defendants Keller and Chertirkin failed to correct Defendants Gantt and Huggins' retaliatory actions of terminating him, and that they had knowledge of a substantial risk to Plaintiff's health and safety due to the commissary heavy lifting work requirements. (ECF No. 33 at 3.) Plaintiff is alleging that Defendants Keller and Chertirkin had knowledge of his retaliatory termination and the violation of his medical restriction of no heavy lifting and that they acquiesced to Defendants Gantt and Huggins' actions.

The only allegations against Defendants Keller and Chertirkin are that in January 2022, Plaintiff submitted a grievance to Defendant Chertirkin regarding being reassigned from commissary to kitchen worker, and Defendant Keller responded to said grievance. (*Id.* at ¶ 34; ECF No. 8-2 at 7.)

While Plaintiff alleges that he complained through the remedy system, that type of allegation—i.e., a claim that grievances were sent to a warden or other administrator—is generally insufficient to establish supervisory liability, absent a plausible allegation that the supervisor had contemporaneous knowledge of the incident and either directed or acquiesced in it. *See, e.g., Folk v. Prime Care Med.*, 741 F. App'x 47, 51 (3d Cir. 2018) (affirming dismissal of claims against warden and others, based on allegation they had received grievances; "Although some of these

defendants were apparently involved in responding to some of Folk's prison grievances, there are no allegations linking them to the underlying incidents and thus no basis for liability based on those later grievance reviews."); *Butler v. Penchishen*, No. 22-CV-3252, 2022 WL 4473590, at *4 (E.D. Pa. Sept. 26, 2022) ("To the extent Butler is attempting to connect any of the individual Defendants to these events based on his allegation that he either filed grievances or wrote them letters, such allegations are unclear and, in any event, would not establish the requisite personal involvement to establish liability."). Plaintiff offers no facts to show that Defendants Keller and Chetirkin had contemporaneous knowledge or participated in Plaintiff's alleged retaliatory firing and being required to work beyond his medical restrictions. Plaintiff alleges only that these Defendants responded to Plaintiff's grievances regarding his allegations. Plaintiff does not allege sufficient facts to allow this claim to proceed, and his claims against Defendant Keller and Chetirkin are dismissed without prejudice. *See Iqbal*, 556 U.S. 662, 678 (2009).

b.   Defendant Russo

Plaintiff argues that Defendant Russo violated his Eighth Amendment rights by maintaining a practice of commissary workers being subjected to unsafe heavy lifting requirements and failing to direct that non-slip treads be installed on the stairs. (ECF No. 33 at 3.)

As explained above, there is no *respondeat superior* liability under § 1983; rather, a plaintiff is required to show that each defendant was personally involved in the alleged wrongdoing. *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (citing *Rode*, 845 F.2d at 1207). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Id.* And, a defendant's knowledge of a risk to health and safety "can be proved indirectly by circumstantial evidence to the effect that the excessive risk was so

16

obvious that the official must have known of the risk." *Thomas v. Tice*, 948 F.3d 133, 138 (3d Cir. 2020) (quoting *Beers-Capitol v. Whetzel*, 256 F.3d 120, 133 (3d Cir. 2001)).

The TAC alleges that Plaintiff submitted a grievance to Defendant Russo concerning his request for non-slip treads on the stairs. (ECF No. 33 at ¶ 20.) The grievance indicates that Defendant Russo forwarded Plaintiff's request for the installation of treads to the maintenance supervisor. (ECF No. 1-1 at 1.) Plaintiff also claims that he submitted requests to Defendant Russo for a back brace or dolly to use in commissary, however, Defendant Russo informed Plaintiff that a back brace must be obtained through the medical department and a dolly request would have to go through Plaintiff's commissary supervisor. (*Id.* ¶¶ 22-23.) The Amended Complaint also alleges that Plaintiff filed a grievance to Defendant Russo regarding Defendant Huggins interfering with his medical lay-in order by requiring him to report to work to question him regarding the medical lay-in. (*Id.* ¶ 27.) Defendant Russo responded that he was forwarding the grievance to Plaintiff's custody supervisor. (ECF No. 8-2 at 1.)

The facts alleged show that Plaintiff's inquiry to Defendant Russo regarding the non-slip treads was made after Plaintiff's fall. Plaintiff has not plead that Defendant Russo had contemporaneous knowledge of a danger posed by the stairs. *See Farmer*, 511 U.S. at 837 ("[A] prison official cannot be found liable under the Eighth Amendment . . . unless the official knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."). Additionally, Defendant Russo informed Plaintiff that he must request a dolly and back brace to other individuals and forward his grievance regarding his medical lay-in to his custody supervisor. These allegations do not state a claim that Defendant Russo was deliberately indifferent and disregarded an excessive risk to Plaintiff's health and safety. *Id.*

If Plaintiff is alleging that Defendant Russo is liable as a supervisor based on the lifting policy in place in the commissary, the TAC fails to state a supervisory liability claim. In the TAC, Plaintiff does not plead facts that identify a specific policy or policies that were in place regarding heavy lifting practices in the commissary. Rather, Plaintiff makes a conclusory allegation that Defendant Russo maintained a practice of commissary workers being subjected to unsafe heavy lifting requirements. Additionally, Plaintiff also fails to allege facts that show Defendant Russo was aware that the commissary heaving lifting policy created an unreasonable risk of constitutional injury, nor does it address that Defendant Russo was indifferent to said risk. Thus, Plaintiff fails to state a viable cause of action under Section 1983 for supervisory liability based on deficient policies against Defendant Russo. *See Iqbal*, 556 U.S. 662, 678 (2009). Accordingly, Plaintiff's Eighth Amendment deliberate indifference claim against Defendant Russo is dismissed without prejudice.

### c.  Defendant Sweeney

Plaintiff alleges that Defendant Sweeny was deliberately indifferent to the substantial risk of harm to Plaintiff's health and safety based on her knowledge of the continuing practice or policy of commissary workers being required to manage a certain level of physical labor. (ECF No. 33 at 4.) Plaintiff also appears to allege that Defendant Sweeny was involved in retaliating against Plaintiff for filing grievances when she forwarded his request for a reduction in his working hours to Defendant Gantt and "direct[ed] [Defendant] Gantt to take any action he deem[ed] appropriate." (*Id.*)

The facts alleged in the TAC and the grievances and inquiries Plaintiff has provided to the Court do not support Plaintiff's allegations. Plaintiff has provided a copy of his inquiry requesting a reduction in his working hours, and Defendant Sweeny indicated that she alerted Defendant Gantt

of Plaintiff's request and that they would work with Plaintiff. (ECF No. 8-2 at 3.) In October 2021, Plaintiff filed an inquiry again requesting to be excused from working beyond his regular work hours based on his enrollment in NJSTEP. (*Id.* at 4.) Defendant Sweeny again responded, indicating that his inquiry was hand-delivered to the "business manager," whom Plaintiff indicates in Defendant Gantt, "for any action he deems appropriate." (*Id.*) Plaintiff also submitted two grievances regarding Defendant Huggins requiring proof of his medical lay-in and Defendant Lewis unfairly terminating him based on Plaintiff not being included in a list of those excused from work. (*Id.* at 1-2.) Defendant Sweeny responded that Plaintiff's concerns were shared with the Job and Wing Committee and that Plaintiff was still, in fact, working in the commissary. (*Id.* at 2.)  Plaintiff offers no facts that Defendant Sweeny instructed Defendant Gantt to terminate Plaintiff or that Defendant Sweeny had any role in Plaintiff's termination from his commissary job. Additionally, the only facts alleged against Defendant Sweeny are regarding Plaintiff's request for a reduction in his working hours, Plaintiff offers no facts to show that she had knowledge of any policy or practice of commissary workers being required to manage any level of physical labor. Thus, Plaintiff fails to state a viable cause of action under Section 1983 for supervisory liability based on deficient policies against Defendant Russo. *See Iqbal*, 556 U.S. 662, 678 (2009).

## IV.    MOTION FOR PRO BONO COUNSEL

Plaintiff seeks the appointment of counsel under 28 U.S.C. § 1915(e)[6], which provides that "[t]he court may request an attorney to represent any person unable to afford counsel." (*See* ECF No. 32.) Plaintiff argues that he should be appointed counsel because his case has merit in fact and law, and special circumstances call for the assistance of counsel. (*Id.*) Plaintiff claims that his

---

[6] Plaintiff incorrectly cites to 28 U.S.C. § 1915(d) as the section providing for the appointment of counsel. (ECF No. 32 at 1.)

medical claims call for knowledge of complex discovery rules, complex legal issues, and factual investigation.[7] (*Id.* at 2.)

Indigent persons raising civil rights claims have no absolute right to counsel. *See Parham v. Johnson*, 126 F.3d 454, 456-57 (3d Cir. 1997). At a minimum, there must be some merit in fact or law to the claims the plaintiff is attempting to assert. *See Tabron v. Grace*, 6 F.3d 147, 155 (3d Cir. 1993). Once that threshold of merit is crossed, a court determining whether to appoint counsel will consider the following (1) the plaintiff's ability to present his or her own case; (2) the complexity of the legal issues; (3) the degree to which factual investigation will be necessary and the ability of the plaintiff to pursue such investigation; (4) the amount a case is likely to turn on credibility determinations; (5) whether the case will require the testimony of expert witnesses; and (6) whether the plaintiff can attain and afford counsel on his own behalf. *See id.* at 155-56, 157 n.5; *see also Cuevas v. United States*, 422 F. App'x 142, 144-45 (3d Cir. 2011) (reiterating the *Tabron* factors).

Although Plaintiff has established his indigence and has pled an Eighth Amendment deliberate indifference to medical needs claim against Defendant Lynch and First Amendment retaliation claims against Defendant Huggins and Gantt with at least arguable merit, the Court finds that the appointment of counsel is not warranted at this time. The Court reaches this conclusion because Plaintiff's TAC indicates that Plaintiff is able to put forth his claims in a clear fashion. At this early juncture, it is unclear whether Plaintiff will require a medical expert. The degree of factual investigation needed and Plaintiff's ability to engage in factual investigation is also unclear at this time, and once the case is proceeded, Defendants will be required to turn over

---

[7] Although Plaintiff states in his motion to appoint pro bono counsel that he is proceeding with a medical malpractice claim, the TAC does not plead a medical malpractice claim. (*See generally* ECF No. 33.) Rather, the Court is proceeding with an Eighth Amendment deliberate indifference to Plaintiff's medical needs against Defendant Lynch regarding only the denial of a bottom bunk restriction.

responsive documents in discovery. The issues presented by Plaintiff do not appear to involve complex legal issues at this point. The Court finds that, on balance, these *Tabron* factors weigh against the appointment of counsel at this time. Plaintiff's request for the appointment of pro bono counsel is therefore denied without prejudice. Plaintiff may reapply for pro bono counsel at a later date as the matter develops.

## V.     CONCLUSION

For the reasons set forth above, the Court will proceed with Plaintiff's TAC (ECF No. 33) in part. Specifically, only Plaintiff's Eighth Amendment deliberate indifference to medical needs claim against Defendant Lynch and his First Amendment retaliation claims against Defendant Huggins and Gantt shall proceed. Plaintiff's Eighth Amendment failure to protect claims against Defendant Huggins, Lewis, and Gantt, and Plaintiff's supervisory liability claims against Defendants Keller, Chertirkin, Sweeny, and Russo are dismissed without prejudice. Additionally, Plaintiff's motion for the appointment of pro bono counsel (ECF No. 32) is denied without prejudice. An appropriate Order follows.

**Dated:** June 24, 2024

JULIEN XAVIER NEALS
**United States District Judge**